Judge Owsley
delivered the Opinion of the Court.
This was an ejectment, brought by the Trustees, to recover the possession of nine hundred and seventy-five acres of land, in the county of Christian.
The cause was tried upon the general issue, and the questions presented for our determination grow out of decisions made by the court below, in the progress of the trial.
Each party claims to hold the legal title to the land in contest, and on the trial, both parties attempted to derive their title from the Commonwealth of Kentucky.
The defendants introduced as evidence, a patent from the Commonwealth, dated in 1813, and signed by Isaac Shelby, then Governor, purporting to grant to John Pursley, assignee of the Trustees of the Kentucky Academy, a certain tract of land in the county of Christian, containing nine hundred and seventy-five acres by survey, bearing date the 19th day of Oct. 1799$ and by the production of several deeds of conveyance, proved regular transfers of the claim of Pursley from him, through others, down to the defendants$ and, also, proved that they were in the actual possession of the land at the commencement of the suit, and that they, or those under whom they claim, had been in the continued possession thereof for seven years previous thereto,
, The plaintiffs introduced as evidence, a copy from the Register’s office, of the survey upon which the patent introduced by the defendants purports to have issued, and proved by Young Ewing, that, as surveyor of Christian county, he was employed by a number of gentlemen in Franklin county, to locate six thousand acres of land in the name of the county court of Franklin, for the use of an Academy, and that the nine hundred and seventy-five *162 acre survey, upon which the patent issued to Pursiey, was one of the surveys made for that purpose, ami that the plats and certificates of the surveys were returned by him, and delivered to his employers in the town of Frank fort, before the lfth day of December, 1800. The plaintiffs also introduced an art of the Legislature of Kentucky of that date, and relied upon its provisions as having vested the lega! title to the land in contest in them.
instructions of tho court touching the ■title.
instructions as to the seven years limitation law.
In a grant by statute, any language which expresses the legislative intention to invest the party with the title, is sufficient-“:lim the land &c. shall be, and the same is hereby vested, is effectual.5’
After the evidence of both parties was through, the court, in substance, instructed the jury—
That if they believed, from the evidence, that the nine hundred and seventy-five acre survey described in the certificate, of survey produced in evidence, is one of the surveys alluded to in the second section of the act of the 17th of December, 1800, and that it is not the survey in that section permitted to be withdrawn from the Register’s office, that the title to the land therein described was vested in the plaintiffs by the act of the Legislature.
But the court also instructed the jury—
That if they believed from the evidence, that the defendants, and those under whom they claim, had been in the continued possession of the land for seven years next before the commencement of the ejectment, that the plaintiffs could not recover.
Though not in the precise language employed by the court, the foregoing is what, we understand to have been in substance the instructions which were given to the jury, and the. main question of contest between live parties, is, whether or not the instructions be correct.
That the court was correct in the first branch of its instructions, is a proposition so obviously clear that any attempt to illustrate its correctness, would be altogether useless ami superfluous. If the survey in question be one of those referred to in the second section of the act, and is not tiio one therein permitted to he withdrawn, it is impossible for an unbiassed mind, after examining (be act, to doubt hut what the title to the land was thereby vested in tho trustees, as full? as it was possible to be done by an act of tbe Legislature. The language contained in the act, is not the most appropriate that could *163 have been employed to vest the title, nor was it necessary to have that effect that it should have been. A.Ü that was necessary to be done, was, for the Legislature, by intelligible language, to express their intention thereby to invest the trustees with the title; arid in language not to be misunderstood, they have most indisputably done so by the provisions contained in the act. The act explicitly declares, “ that the land &c. shall be, and the same is hereby vested in the trustees &c.” and how is it possible for an act of the Legislature to vest land •in any person otherwise than by clothing the person with the legal title, as must have been intended by the act of 1800? Unless, therefore, it was incompetent for the Legislature, by an act of assembly to pass the title, the first branch of the instructions .must he correct.
Statute declaring the land surveyed for the Seminary, to be vested in trustees for its use is effectual, and no other having right, passes the title.
In the general statute of limitations, the 20 years is computed . from the date in the oocupaut’s adverse possession, when the right of entry accrued under lessor’s title — as thg date of th^ grant.
With respect to the power of the-Legislature, it is proper to premise, that the record contains nothing conducing to shew that Pursley held any interest in the .survey, prior to the passage of the act, or that before then, any patent had ever issued therefor, to any other person; hut, to the contrary, it appears that the patent to Pursley bears date many years after the date of the act. We must, therefore, take it for granted, that the title resided in the Commonwealth on the passage of the act, and, of course, it must have been competent for the Legislature to divest the Commonwealth of her title, by an act vesting the title of lands which had been surveyed under the authority of law for an Academy in trustees for the use of that institution.
If, then, it be true, that the title passed to the trustees by the act of the Legislature, we are brought to enquire whether or not the court below, in the latter branch of its instructions was correct, in directing the jury, that the plaintiffs could not recover, if they believed, from the evidence, that the defendants, and those under whom they claim, had been actually possessed of the land for seven years next before the commencement of the ejectment.
The possession of the defendants, and those thro’ whom they claim, $s it was taken under the patent of Pursley, ought to be construed to be adverse to *164 the title derived by the trustees from the act of the Legislature; and, if continued for twenty years, would, no doubt, bar the plaintiffs in any action of ejectment that might thereafter be commenced fox* the land; For there-can be no recovery by a plaintiff in an action of ejectment, unless he holds a right of entry in the land, and by the provisions of the general act limiting the time for making entries, it is expressly declared, “ that no person or persons 44 who may have any right or title of entry into any “ lands, tenements or hereditements, shall make “ any entry but within twenty years next after such “ right or tilia accrued; and such person shall bo {C barred from any entry afterwards.”
The seven years, in the act of 1809, 'Taudoou-U" tinua! resi(fenceon the claimantth° lli'msc-ii,under an adversary ■"rl)^fenrey’ pa ’-n •
Whorcthetiícfthe'ooou-^ pout, is a grant by statute, the seven .years limitation law ¡loes not apply.-—
*164 But the instructions of the court, were not bypothecated upon the fact of the possession of the defendants having been such as to bring the case within the provisions of that act; they were predicat('d u!>01i the opinion the jury might form, on the 'pvidcuce, as to a possession for seven years by the defendants, and those under whom they claim, before the commencement of the plaintiff’s action, so that the correctness of the instructions must turn upon the construction to be given to the art of ^<'e^I’uar3'’ 1809, for the speedy adjustment of land claims; between which and the general act limiting the time of making entries, there is an essential difference, not only as to the length of possession which will bar a recovery, bat also as to the circumstances with which the possession must be connected. instead of twenty years mentioned in the general act, but seven years is required by the act of 1809; but, to form a bar to an action, something more is required by the latter act than an adverse possession for seven years — the possession must have been acquired by actually settling upon the land, and must, be continued, under an advei’se interfering entry, survey or patent; and not only so, but the action must also be brought to recover upon an adverse entry, survey or patent.
A possession, such as that upon which the instructions of the court were hypothecated, cannot, therefore, be admitted to bar the plaintiff’s action; for the plaintiff’s right of entry is not derived. under *165 a patent from the Commonwealth, but under an act of the Legislature; and the possession of the defern!ants, though adverse to the plaintiffs, does not appear to have been accompanied by an actual settlement upon the land; and if there had been such a settlement, the title under 'which it was holden, could not, in the sense intended by the makers of the a*'t, be said to be adverse to the title of the plaintiffs, in as much as the patent to Parsley is founded upon the same, survey, in virtue of which, the Legislature vested the title in the plaintiffs.
This limitation applies only where the adversary possession is, by actual residence of the claimant himself — —.
It does not apply where-both parties claim under the same survey.
Register’s endorsement on the copy of the survey, and his certificate of tl.o time of the registration of the claim objected to in the circuí,*court.
It is propel for the Regis • ter, though ' not expressly required by the statute, if endorse on the surveys when received inio his of-¡10.: — & in do-in'! so, be acts niikiu his sphere, because necessary (o discharge his duty iu the mailer.
*165 The. latter branch of the instructions cannot, therefore, be correct.
But, as the cause must return to the court below for further proceedings, it is proper we should notice a question made and decided iii the progress of the trial, on a point of evidence. For the purpose of identifying the survey intended to be vested in the plaintiffs by the act under which they claim, a copy of the nine hundred and seventy-five acre survey, together withs the following endorsement thereon, to-wit: st Academy 975 acres u copy survey, rec d 16th Beer, 1799; examined, “ fee 25 cents,” were offered in evidence by the plaintiffs, and, at the same time, they offered to read to the jury the. Register’s certificate, subjoined to the copy of survey, in the following words, viz: “ I do hereby certify, that the original survey “ of which the above is a copy, was received into “the land office the 16th day of December, 1799. ts John M. Foster, R. L. Off.” But the endorse meat upon the copy of the survey, and the certificate of the Register as to the time of his receiving into bis office the original survey, were both objected to by the defendants, and excluded from going in evidence to the jury.
It was, we apprehend, strictly correct for the .Register to note upon the original survey, the time it was received into his office. We have been unable to find any statutary provision which expressly enjoins that duty upon the Register, but it is impossible for imn legally to perform the functions of his office, without regarding the time of receiving surveys into his office, ami surely, whatever is noces»
Copy of such nu endorsement, cor;i(iiaiJ by the Register to be a true copy, is competent evidence — his mere certificate of ilia date of the registration r'nol.
Crittenden and Mayes for plaintiffs; Triplett for defendants.
sary to a fulfilment of the functions of his office, cannot bo said to be out of (he sphere of his duty to do. As a mean, therefore, to enable the Register to perform, with correctness, the injunctions of his office, it was proper, in accordance to the invariable practice ever since the establishment of a land office, to note upon the survey when it was received into his office.
If, then, in noting the time when the survey was made, the Register acted within the pale of his official duty, it would seem to follow as a necessary consequence, that the note of that fact by him, if properly authenticated, should be received in all cases involving the fart, as legitimate evidence. Instead, however, of certifying, as the rejected certificate of the Register purports to certify, that the original survey was received by him on a particular day, the Register should regularly copy the note or memorandum made upon the original survey, and certify the same to be a correct transcript.
The judgment must be reversed with costs, the cause remanded to the court below, and further proceedings there had, not inconsistent with this opinion.